IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BARRY E. SHELLEY,
    Plaintiff,
    v.
SOMERSET COUNTY JAIL and
TIMOTHY MAPES, WARDEN,
    Defendants

Case No. 3:04-cv-01-MBC-KAP

## Report and Recommendation

### Recommendation

The defendants' motion for summary judgment, docket no. 21, was reinstated and responded to by plaintiff. There are two claims: that defendant[1] Mapes was deliberately indifferent to plaintiff's serious dental medical needs while he was an inmate at the Somerset County Prison, and that defendant Mapes was deliberately indifferent to the threat that a fellow inmate would assault plaintiff on May 1, 2002. Judgment should be entered for defendant on the dental care claim, and the inmate assault claim should proceed to trial.

### Report

The Federal Rules of Civil Procedure allow a party to obtain summary judgment upon a showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is "regarded not as a disfavored procedural shortcut, but rather as an integral

---

1. Plaintiff formally names the warden and the prison as defendants but does not develop any custom or policy claim against the warden in his official capacity or differentiate between the two defendants. As a practical matter, defendant Mapes is the only defendant.

part of the Federal Rules... ." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Rule 56(c) requires the entry of summary judgment "... if ... there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[T]he requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). An issue of fact is "genuine" if the evidence is such that a reasonable factfinder might, under the applicable substantive law, return a verdict for the non-moving party. Id., 477 U.S. at 257. In determining whether there is an issue of material fact, all inferences must be drawn in favor of the non-moving party. Celotex Corp. v. Catrett, 477 U.S. at 322-23.

Prison inmates have a constitutional right that prison officials not be deliberately indifferent to their safety or to any other basic human need, including their serious medical needs, see Estelle v. Gamble, 429 U.S. 97 (1976), and their need to be protected from other inmates. See Day v. Federal Bureau of Prisons, 233 Fed.Appx. 132, 133 (3d Cir.2007).

As applied to both of plaintiff's claims, the Supreme Court has defined deliberate indifference the same way:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994). A defendant's state of mind, like other facts, can be proved by circumstantial evidence. Woloszyn v. County of Lawrence, 396 F.3d 314, 321 (3d Cir.2005)(citations omitted). Nevertheless, even a gross error of judgment does not equal deliberate indifference[2]: liability requires subjective, not objective culpability. Farmer, 511 U.S. at 843 n.8.

Applying Farmer, Woloszyn affirmed the grant of summary judgment to corrections personnel at the Lawrence County Prison who allowed a pretrial detainee to commit suicide by hanging himself approximately ninety minutes after arriving at the prison. According to the appellate court, the lack of evidence that Woloszyn was a particular risk for suicide meant that defendants could not have been on notice that Woloszyn faced a substantial

---

2. See Farmer, 511 U.S. at 844: [I]t remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, <u>or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent</u>. In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. (my emphasis).

3

risk of serious harm. A fortiori, the individual defendants could not be deliberately indifferent to that risk.

By contrast, Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir.1997), reversed the grant of summary judgment for defendants in the case of an inmate assaulted by fellow prisoners. Hamilton, who had a long history of being assaulted by fellow prisoners because he was perceived as an informant, was attacked at a Delaware prison while in the general population, two months after the multidisciplinary team (MDT) recommended he be placed in protective custody. The district court granted summary judgment on Hamilton's failure to protect claim; the court of appeals reversed.

Defendant Lewis, the head of the classification committee (CICC) which was a level above the MDT, denied the request for protective custody, for the stated reason that "there was no evidence of a problem" in the prison. The appellate court found that the existence of a material fact on the issue of substantial risk of serious harm was demonstrated by the fact that the MDT had made a not "unwarranted or one-sided" recommendation for protective custody. 117 F.3d at 747. The panel concluded there was a material issue of fact as to defendant Lewis' deliberate indifference, because Lewis could be charged with the knowledge of Hamilton's long history of being at risk for assaults as a result of being branded a snitch, and nevertheless decided not to place him in

protective custody. The panel characterized that as a "decision to consciously disregard that risk." 117 F.3d at 748.

The members of the MDT were granted summary judgment by the district court on the basis that they had made the recommendation of protective custody (which in hindsight was the proper decision) and could not, once that course of action was rejected by the CICC, sua sponte, place Hamilton in protective custody. The circuit reversed on the grounds that the MDT could have taken some "additional steps," after its recommendation was rejected, such as placing Hamilton in administrative segregation, and that the MDT's failure to do so "could be viewed by a factfinder as the sort of deliberate indifference to inmate safety" that would allow the imposition of liability on the MDT members. 117 F.3d at 749.

In Beers-Capitol v. Whetzel, 256 F.3d 120, 123 (3d Cir.2001), the Court of Appeals analyzed the question of deliberate indifference in determining the liability of supervisory personnel for the misconduct of a corrections officer at a juvenile detention center in New Castle, Pennsylvania. Plaintiffs Tate and Beers-Capitol, two juvenile female inmates, proved at trial that they had been sexually exploited by Whetzel, a male corrections officer; they appealed the trial court's earlier grant of summary judgment to all the supervisory personnel at the juvenile detention center. The Court of Appeals affirmed the grant of summary judgment to

5

almost all of the supervisory officials, holding that plaintiffs' evidence of the general risk of sexual assault was not sufficient circumstantial evidence to create a trial issue that prison officials must have known of the risk that Whetzel would assault Beers-Capitol, and holding that the subsequent accusation that Whetzel had molested Beers-Capitol (and other inmates) was insufficient to put most of the supervisory defendants on notice that Whetzel posed a risk to Tate. Significantly, however, the Beers-Capitol panel reversed the grant of summary judgment to one supervisory defendant, Nora Burley, who allegedly admitted to Tate she "kind of knew" of Whetzel's pattern of improper sexual contact with inmates. 256 F.3d 141-42.

Most recently, in Day v. Federal Bureau of Prisons, the Third Circuit affirmed, per curiam, the dismissal of the claim of an inmate that prison officials were deliberately indifferent to the prospect that he would be assaulted. The panel held that the lack of allegation that defendants were aware of any "specific threat of harm against him" doomed plaintiff's claim since prison officials could not be deliberately indifferent to something they were not aware existed.

This case presents the inverse of Day and Hamilton, and is akin to the case of Burley in Beers-Capitol. Plaintiff does not allege or show that there was a specific threat to him from McKee, rather plaintiff alleges (and he is clearly piggybacking on other

6

claims of intra-prison assaults taking place at the Somerset County Prison at the same time) that the specific person who attacked him was a known threat. Although plaintiff does not develop the argument, it is correct that a plaintiff need not show both that he was specifically at risk and that there was a specific source of the danger. As <u>Day</u> observed, something less than a reign of terror will do, 233 Fed.Appx. at 134, <u>citing</u> <u>Riley v. Jeffes</u>, 777 Fed.2d 143, 147 (3d Cir.1985), and while the few similar incidents alleged by plaintiff are not a reign of terror, Warden Mapes acknowledged that McKee was a known discipline problem, in part because of his assaultive behavior. docket no. 24-3, Mapes Affidavit, Exhibit E to Appendix of Material Facts.

According to the medical records which are not in dispute, Richard McKee bloodied but did not fracture plaintiff's nose. In plaintiff's deposition, he described the assault as a unprovoked assault by McKee which occurred in the evening of May 1, 2002, as a number of inmates were in a common area watching television: McKee came over to plaintiff's side of the room and threw a single punch which landed, bloodying plaintiff's nose. According to plaintiff, McKee had assaulted several other inmates before the assault on him and was in fact in prison because of an assault on two Pennsylvania State Police troopers. Plaintiff believed McKee received ten days in restrictive confinement as a sanction for the assault on him, which plaintiff characterized as

a relatively light punishment. Plaintiff testified that after the assault on him, McKee assaulted another inmate or inmates.

Mapes's affidavit disclaims deliberate indifference because "there was no reason to believe that, with discipline, McKee would not respond since he had responded to discipline in the past." What is left out here is telling. Understandably defendant does not want to do plaintiff's work for him, but Mapes's affidavit does not even acknowledge what McKee was disciplined for in the past or what form that discipline took. As such it is hardly more specific than the general denial of liability contained in the pleadings. Just as <u>Farmer</u> instructs that deliberate indifference does not require a prison official to admit knowing disregard of a serious risk, so a prison official's denial of subjective awareness of a serious risk does not relieve him of liability when the evidence shows that denial of subjective awareness is not credible. Mapes's affidavit could be construed to mean simply that Mapes did not believe McKee to be a danger because after the last time he was disciplined for assault, McKee hadn't assaulted anyone until he assaulted Shelley. A factfinder could conclude from that permissible construction that Mapes didn't care (in the sense meant by <u>Farmer</u>) about the effectiveness of any discipline, in other words that he was indifferent to the prospect that McKee would continue to assault other inmates, and that this was a causal factor in the assault on plaintiff. Although it is not directly

relevant because it deals with events after the assault on plaintiff, according to plaintiff this pattern of ineffectual discipline is corroborated by events after May 1, 2002, because McKee was punished for the assault on plaintiff, then placed back in the general population, then assaulted still another inmate.

Plaintiff alleges he was at the Somerset County Prison between January 2002 and August 2003. Judgment must be entered for defendants on plaintiff's claim that he received inadequate dental care while there for at least two reasons. First, plaintiff's affirmative evidence in support of his claim consists of little more than a rather snide affidavit in which he alleges that the medical unit should have done more and that his admitted failures or refusals to go to a scheduled dental appointment at the Somerset County Prison on December 5, 2002, and to a similar appointment at the medical unit at S.C.I. Houtzdale (several months after leaving the Somerset County Prison) when scheduled were reasonable because he was sick both times. See docket no. 42-1 at 1-6, especially ¶14. However, plaintiff is not litigating a negligence claim against a medical doctor, he is claiming deliberate indifference on the part of the non-doctor warden, who has delegated medical care to a specialized department. As the Court of Appeals has stated, in a prison with a medical department:

[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official ... will not be chargeable

with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004); see also Beers-Capitol, 256 F.3d at 134-35[3] (the two ways of proving supervisory liability are to show awareness of a pattern of similar injuries or to show that the risk of harm is so great that failure to anticipate it and respond is unreasonable). What the record shows is that plaintiff made two requests for furloughs so that plaintiff could visit his dentist. When the requested furloughs were denied by the Court of Common Pleas of Somerset County, plaintiff asked to see the prison dentist in September 2002 and again in November 2002, for what plaintiff described without more detail as "a lot of teeth problems." docket no. 24-3 Exhibit F. As noted above, plaintiff was eventually scheduled to see the dentist in December 2002, failed to do so because he was sick, and then was not seen again until he was transferred to a state prison. Plaintiff used the prison request system many times to make request for supplies for legal work, for eye drops, and for the nurse to examine him after McKee punched him, docket no. 24-3 Exhibit C, but there is

---

3. For supervisory liability in general, a plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. Beers-Capitol v. Whetzel, 256 F.3d at 134. Plaintiff does not attempt to establish an issue of fact as to any of these elements.

no evidence that he made any other written request for dental care while in prison. The warden cannot be charged with indifference toward a problem he would have no reason to know about, and the plaintiff's bare and unrepeated statement that he had "a lot" of unspecified dental problems cannot possibly have given the warden notice of a serious medical need.

A second point common in inmate cases, which applies with particular force in this case, is that inmates who are not medical personnel are ordinarily not competent to offer opinions as to the adequacy of their medical care. The present plaintiff is no exception: he does not offer any competent opinion that the medical care he received or could have received at the Somerset County Prison was substandard, much less the product of deliberate indifference. Nor does he prove that any harm was caused by defendant; even his eventual treatment at S.C.I. Houtzdale is described as "routine." See docket no. 24-8 at 7 Exhibit H (dental records) Plaintiff cannot prove his Estelle v. Gamble claim without expert evidence because, unless a medical "matter ... is so simple, and the lack of skill or want of care so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons," expert testimony is necessary to establish both the lapse in meeting the standard of care (in this case deliberate indifference) and the causation of injury. See Brannan v. Lankanau Hospital, 490 Pa. 588, 417 A. 2d 196, 201

(1980), quoting Chandler v. Cook, 438 Pa. 447, 451, 265 A.2d 794 (1970); Geibel v. United States, 667 F. Supp. 215, 219 (W.D.Pa.1987), aff'd, 845 F.2d 1011 (3d Cir.1988). Estelle v. Gamble presents some claims under the Eighth Amendment case where no expert testimony would be needed to show a culpable state of mind, for instance if a prison doctor decided to throw away an inmate's ear and stitch the stump rather than to treat the inmate after an altercation, or decided to inject a prisoner with penicillin when the doctor knew that the inmate is allergic. 429 U.S. at 104 n.10. But those cases are the exception.

A non-Estelle v. Gamble case from the Court of Appeals, Bushman v. Halm, 798 F.2d 651, 658-59 (3d Cir.1986), is instructive. The panel, applying New Jersey law in an FTCA claim, held that expert testimony was not necessary to prove that the government's action caused plaintiff's alleged injuries because in that case the causal mechanism was obvious: plaintiff was driving his truck, his truck was struck head on by a Postal Service jeep, and plaintiff claimed that his knees began to hurt immediately after the collision. Here, Shelley does not claim there was some obvious dental trauma that called out for care or even investigation, and he does not even allege that he was prevented from asking for care for his teeth if he had wished to do so. His evidence is insufficient to withstand summary judgment.

In short, what should proceed to trial is plaintiff's claim that he was injured when McKee assaulted him. If the parties wish to try this case before me, they should indicate that and I will schedule it for the next available jury trial term. If the parties wish to try the matter before Judge Cohill, they should indicate that and I will schedule a settlement conference before me in an attempt to settle the matter before trial.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: August 26, 2008

Keith A. Pesto,
United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

    Barry Shelley  FL-5014
    S.C.I. Houtzdale
    P.O. Box 1000
    Houtzdale, PA 16698-1000